John L. LINO, Appellant in No. 72–1672,

v.

CITY INVESTING CO., a corporation,
Appellant in No. 72–1673.

Nos. 72–1672, 72–1673.

United States Court of Appeals,
Third Circuit.

Argued May 2, 1973.

Decided Aug. 20, 1973.

Lawrence G. Goodman, Goodman, Stoldt & Breslin, Hackensack, N. J., for John L. Lino.

Clyde A. Szuch, Harry F. Geair, Pitney, Hardin & Kipp, Newark, N. J., for City Investing Co.; Louis Loss, Cambridge, Mass., Richard E. Nolan, Daniel F. Kolb, Davis, Polk & Wardwell, New York City, of counsel.

Before HUNTER and WEIS, Circuit Judges, and NEWCOMER, District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This case involves the interpretation of the federal securities laws to determine whether there is federal jurisdiction to hear John Lino's complaint.

Lino purchased two "Franchise Sales Center Licensing Agreements" from Franchise International ("FI"), a wholly-owned subsidiary of City Investing. Payment was made with cash and several promissory notes. He now contends that he was induced to purchase these agreements by certain material misstatements of City Investing which violated the following provisions of the federal securities laws: 15 U.S.C. §§ 77l(2), 77q(a), 78j(b) and 17 C.F.R. § 240.-10b–5.

City Investing moved to dismiss the complaint for lack of federal subject matter jurisdiction. It argued that none of the instruments involved in the transaction were "securities" as defined in 15 U.S.C. §§ 77b(1) and 78c(a)(10). It also denied there was a "purchase" of a security within the meaning of 15 U.S.C. § 78j(b).

The district court held that the "Franchise Sales Center Licensing Agreements" purchased by Lino were not securities; but it determined that Lino's promissory notes were "securities" and that the transaction involved a "purchase" of them by FI. It therefore denied City Investing's motion to dismiss. This court granted City Investing leave to appeal the order of the district court pursuant to 28 U.S.C. § 1292(b). To avoid a fragmented appeal, we allowed Lino to appeal the holding that the licensing agreements were not securities. These appeals are now before us.

The factual landscape of this suit is relatively uncluttered. FI's "better mousetrap" apparently is a system of finding franchisees for franchisors seeking to market their products. FI and the franchisor contract with each other; FI then refers the franchisor's program to a "Franchise Sales Center Licensee"; the licensee must find an "area distributor" to represent each particular franchisor; the "area distributor" then finds various sub-franchisees [1] who actually sell the products of the franchisor.

A franchise sales center licensee has exclusive rights to market FI approved franchise programs within certain areas. To become a licensee, a person must pay a certain fee to FI. To become an area distributor, one must also pay a certain fee to FI. To become a sub-franchisee, a person must again pay a certain fee.

Lino contracted with FI to become a licensee in two areas. Payment was by cash and by promissory notes. According to the agreements he signed and the accompanying brochure, Lino was to receive 37½% of the fees paid by the area distributors recruited by him. He was also to receive 12½% of any fees paid by the sub-franchisees within his area. FI also agreed to train the licensee in the techniques of establishing and operating one of its sales centers. It then was to provide him with whatever franchising programs it contracted to mar-

---

1. Why there is no "franchisee" in this scheme when there is a "sub-franchisee" is unexplained.

ket and to advertise and promote the general concept of its Franchise Market Centers.

Lino, in turn, was obligated "to devote full time and best efforts" or to cause someone employed by him "to devote full time and best efforts" to the proper conduct of his sales center. According to the brochures incorporated into the agreement by reference, Lino also was required to find area distributors for each particular franchise program provided by FI and to train those distributors accepted by FI. All profit that Lino was to receive would come directly or indirectly from his recruiting and training of the area distributors.

In his complaint, Lino alleged that he was induced to purchase his agreements by certain misrepresentations of City Investing and its subsidiary, FI. The district court succinctly summarized Lino's allegation: "Specifically, FI allegedly stated that it would continue to be wholly owned by defendant and thus supported by its prestige and resources while, at the same time, it was aware of the existence of a lawsuit instituted by defendant seeking to rescind the agreement by which FI became defendant's subsidiary. Without defendant's support, plaintiff concludes, the franchises are worthless." Lino claims that the li-

censing agreements which he purchased are "securities" within the definition of 15 U.S.C. § 77b(1) [2] and 78c(a)(10).[3] Additionally, he claims that the personal promissory notes which he used in partial payment for these agreements also were "securities" under the same definitional sections. We will consider the franchise agreements first.

## I. THE FRANCHISE AGREEMENTS

Both parties agree that whether the franchise agreements in question here were securities depends on whether the agreement can be classified as an "investment contract." [4]

The classic definition of an investment contract comes from S. E. C. v. Howey, 328 U.S. 293, 298–299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946):

". . . [A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits *solely* from the efforts of the promoter or a third party . . . ." (Emphasis added). City Investing stresses the word "*solely*" to us in the above definition. It contends that if there is any participation by the investor in the scheme, an

---

2. 15 U.S.C. § 77b(1) states:

"Sec. 2. When used in this title, *unless the context otherwise requires*—

"(1) the term 'security' means *any note*, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract*, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. (Emphasis added). 15 U.S.C. § 77b(1).

3. 15 U.S.C. § 78c(a)(10) states:

"When used in this title, *unless the context otherwise requires*—

"(10) The term 'security' means *any note*, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract*, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited." (Emphasis added). 15 U.S.C. § 78c(a)(10).

4. See footnotes 2 and 3.

investment contract is not present. Some courts have read the Howey opinion that narrowly. *E. g.,* Mr. Steak, Inc. v. River City Steak, 460 F.2d 666 (10th Cir. 1972), aff'g. 324 F.Supp. 640 (D.Colo.1970); Chapman v. Rudd Paint & Varnish Co., 409 F.2d 635, 639–641 (9th Cir. 1969); [5] S. E. C. v. Koscot v. Interplanetary, Inc., Civil No. 17134 (N.D.Ga. April 20, 1973); Franchise Opportunities, Inc. v. Franchises Int'l., Inc., N.D.Ohio, Civ. No. 69–768, Sept. 6, 1972 (essentially same facts as this case).

That approach provides certainty but we find that that consideration is outweighed by other factors. The Supreme Court has emphasized that the definition of a security "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." S. E. C. v. Howey, *supra,* 328 U.S. at 299, 66 S.Ct. at 1103. *Accord,* S. E. C. v. Joiner, 320 U.S. 344, 351, 64 S.Ct. 120, 88 L.Ed. 88 (1943); Tcherepnin v. Knight, 389 U.S. 332, 338, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). The court has stressed that the securities acts are remedial legislation which must be broadly construed. Tcherepnin v. Knight, *supra* at 336, 88 S.Ct. 548.

In view of these statements, the Ninth Circuit has decided not to read "solely" literally when considering the efforts made by an investor. Instead, it has held that an investment contract may be present where there is an investment in a common enterprise and:

"[t]he efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." S. E. C. v. Glenn W. Turner Enterprises, Inc., 474 F.2d 476, 482 (9th Cir. 1973).

The S.E.C. has made a similar statement:

"It must be emphasized that the assignment of nominal or limited responsibilities to the participant does not negative the existence of an investment contract; where the duties assigned are so narrowly circumscribed as to involve little real choice of action or where the duties assigned would in any event have little direct effect upon receipt by the participant of the benefits promised by the promoters, a security may be found to exist. As the Supreme Court has held, emphasis must be placed upon economic reality. *See* Securities and Exchange Commission v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L. Ed. 1244 (1946). While the Commission has not taken the position that a franchise arrangement necessarily involves the offer and sale of a security, in the Commission's view a security is offered or sold where the franchisee is not required to make significant efforts in the operation of the franchise in order to obtain the promised return."

Securities Act Release No. 5211 (Nov. 30, 1971), reported in 1971–72 Transfer Binder C.C.H. Fed.Sec.L.Rep. # 98446.

Finally, at least one state court has emphasized that an investment contract exists where the investor does not have to make significant efforts in the operation of a franchise. State v. Hawaii Market Center, Inc., 485 P.2d 105 (Hawaii 1971).

█ We find these authorities persuasive. The reasoning of the Supreme Court, the Ninth Circuit, the S.E.C. and Supreme Court of Hawaii leads us to hold that an investment contract can exist where the investor is required to perform some duties, as long as they are nominal or limited and would have "little direct effect upon receipt by the participant of the benefits promised by the promoters." Sec. Act Release No. 5211, *supra.* As the Ninth Circuit realized, to adopt a position similar to City Investing's would lead to easy evasion of the

5. *Contra,* S. E. C. v. Glenn W. Turner Enterprises, Inc., 474 F.2d 476, 482 (9th Cir. 1973).

act "by adding a requirement that the buyer contribute a modicum of effort." S. E. C. v. Glenn W. Turner, *supra* at 482.

■■ The district court recognized that it had to examine "the substance and economic reality of the situation rather than the formal characteristics of the parties in interest. [Citations omitted]." Joint Appendix, 182A. It then analyzed the agreement and the brochure incorporated into the agreement by reference and held that the franchise agreements in question were not securities. We agree with the district court that on their face the documents were not securities.

Lino is required to make significant efforts. He has to open a sales center, staff it, and devote full time and best efforts to his business. He must recruit area distributors for FI programs and train them. The agreements demonstrate that his efforts are not nominal or insignificant. He must recruit area distributors to earn money and to remain as a FI representative.

There are, in his complaint, affirmative allegations that Lino spent "substantial other monies in the establishment and promotion of a 'Sales Center' to market franchises . . . ." The proofs before the district court demonstrated very real work and efforts by Mr. Lino and expenditures by him of some $60,000 for such items as rental, stationary, salaries, meetings, advertising, entertainment, travel, and other indicia of the operation of a going business.

In his brief, Lino contends that he "alleges factual contentions which call into question the meaning and substance of the agreement." If this were so, we might well agree with Lino that the district court should not have determined whether the agreements were securities without a fuller factual exposition. It would seem that only through examining all the facts and circumstances surrounding the agreement could the Supreme Court's mandate to emphasize economic reality be given full effect. But we have read Lino's complaint, and we must agree with the conclusion of the district court that nowhere does he allege that the arrangements involved anything other than what was stated in the documents.

Accordingly, the decision of the district court, on the franchise agreements, will be affirmed.

## II. PROMISSORY NOTES

Lino's second jurisdictional contention is that the transaction in this case involved the "purchase" of "securities" by City Investing within the meaning of 15 U.S.C. §§ 78c(a)(10),[6] 78c(a)(13),[7] 78j(b)[8] and 240 C.F.R. 10(b)(5).[9] Spe-

---

6. For 15 U.S.C. § 78c(a)(10), see fotnote 3.

7. § 78c(a)(13) states:
"Unless the context otherwise requires . . . .. The terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire."

8. § 78j(b) states:
"Regulation of the Use of Manipulative and Deceptive Devices
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
   *     *     *     *     *
"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any

manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

9. 240 C.F.R. 10(b)(5) states:
"Rule 10(b)(5). Employment of Manipulative and Deceptive Devices
  "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
  "(1) to employ any device, scheme, or artifice to defraud,
  "(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the cir-

cifically, he alleges that City Investing "purchased" "securities" (i. e., his personal promissory notes) from him with its right to operate its franchise sales center.

■ Since the 1934 act may be violated when the fraud involves the thing given rather than the security received, *E. g.*, Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693. Lino argues that there is federal jurisdiction of his claim. City Investing denies that Lino's notes were "securities," and it denies that it "purchased" them.

The district court accepted Lino's reasoning. It held that the notes involved were securities and then held that there was a "sale" of these securities.[10] Other courts have reached differing conclusions when ruling on transactions between private parties involving the purchase or sale of notes. Two have deter-

mined that there was a purchase or sale of securities when, as in the present case, the plaintiff was the maker rather than the "buyer" or payee of a promissory note.[11] Several others have determined that in private transactions a security was sold when the plaintiffs were the payees or "buyers" of the notes.[12] But many courts have also ruled that various transactions with promissory notes did not involve the purchase or sale of "securities." [13]

■ After considering the noted decisions and the arguments of both parties, it is our view that the legislation was not intended to cover the transaction which occurred here. All of the definitional sections involved in this case are introduced by the phrase *"unless the context otherwise requires."* The commercial context of this case requires a holding that the transaction did not involve a "purchase" of securities. These were personal promissory notes issued by a private party. There was no public

cumstances under which they were made, not misleading, or

"(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

10. Although it is a technical point, the question is not whether Lino sold securities but whether City Investing purchased them. We will speak to whether City Investing purchased a security from Lino as Lino's complaint is drafted in this language.

11. Movielab, Inc. v. Berkey Photo, Inc., 452 F.2d 662 (2d Cir. 1971), aff'g. per curiam 321 F.Supp. 806 (S.D.N.Y.1970) ($10,500,000 in notes payable over twenty years issued by one publicly held corporation to another publicly held corporation in exchange for assets); MacAndrews & Forbes Co. v. American Barmag Corp., 339 F.Supp. 1401 (E.D. S.C.1971) (bill of exchange issued to purchase machinery was a "form of a note").

12. Rekant v. Desser, 425 F.2d 872, 878 (5th Cir. 1970) (corporation induced to issue a $782,000 note with treasury shares in payment for land); Lehigh Valley Trust Co. v. Central Nat'l. Bank of Jacksonville, 409 F.2d 989, 991–993 (5th Cir. 1969) (loan participation agreement sold by one bank to another was a "certificate of . . . participation" in . . . a note.); Olympic

Capital Corp. v. Newman, 276 F.Supp. 646, 653 (C.D.Cal.1967) (promissory note issued in return for a personal loan, but neither party questioned that note was a security); Prentice v. Hsu, 280 F.Supp. 385, 386 (S.D. N.Y.1968) (promissory note issued in return for a personal loan); *cf.* Whitlow & Associates, Ltd. v. Intermountain Brokers Inc., 252 F.Supp. 943 (D.Haw.1966) (deposit paid to a broker in connection with an unsuccessful application for a construction loan; broker guaranteed deposit would be repaid).

13. McClure v. First National Bank of Lubbock, Texas, 352 F.Supp. 454 (N.D.Tex. 1973) (promissory note in exchange for a loan to plaintiff's closed corporation); Janssen v. Tri-Pac Development Corp. and Triangle Pacific Forest Products Corp., No. 72–1200 (E.D.Pa. Dec. 1, 1972) (promissory note used to purchase a home); Joseph v. Norman's Health Club, Inc., 336 F.Supp. 307 (E.D.Mo.1971) (promissory notes issued in return for lifetime health club memberships); S. E. C. v. Fifth Ave. Coach Lines, Inc., 289 F.Supp. 3, 38 (S.D.N.Y.1968) (note in return for a personal loan); Beury v. Beury, 127 F.Supp. 786, 789 (S.D.W.Va. 1954), appeal dismissed, 222 F.2d 464 (4th Cir. 1955) ($70,000 personal loan not a security but unclear whether a note was issued).

offering of the notes, and the issuer was the person claiming to be defrauded. The notes were not procured for speculation or investment, and there is no indication that FI was soliciting venture capital from Lino.

In various circumstances, courts have held that the absence or presence of some of these factors has justified an assertion of federal jurisdiction.[14] None have held that there was a purchase or sale of securities on facts substantially similar to this case, however, and we find persuasive the reasoning of the cases cited in footnote 13.

As the court stated in McClure v. First National Bank of Lubbock, Texas, *supra*, 352 F.Supp. at 457:

> "Thus the Act is designed to deal with substance over form and to regulate and prohibit fraud involved in the sale of promissory notes where such notes are sold or traded for purposes of speculation or investment in the same way that stock [sic], bonds, or debentures might be traded, sold or exchanged."

In no way could City Investing be said to have "purchased" Lino's notes for speculation or investment. City Investing was selling a certain contract right to Lino, not buying his security. It simply lacks common sense to describe the transaction as City Investing purchasing John Lino's security by paying him the right to operate one of its Franchise Sales Centers.

■ To accept Lino's argument would mean that any consumer who bought an article "on time" and issued a note would be able to sue in a federal court on the theory that the retailer had purchased his "security." If it had intended, in legislation entitled the "Securities Exchange Act," to extend federal jurisdiction to transactions of this type, Congress most certainly would have given a real indication of such an intent. Yet the parties have been unable to find any legislative history on this point, and

Congress' silence supports City Investing. The paucity of cases based on this theory also creates an inference that this transaction was not to be covered. We are mindful of admonitions to read the Securities Act broadly, *e. g.,* Tcherepnin v. Knight, *supra,* but we also must remember that not every plan generating allegations of fraud is a violation of federal securities law.

The district court recognized the implications of its holding but felt that it was bound by the language of the statute. As we pointed out, the definitions are prefaced by "unless the context otherwise requires . . . ." The Supreme Court has stated "that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." Holy Trinity Church v. United States, 143 U.S. 457, 458, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). This transaction was not within the intent of Congress.

The district court also felt that the decision in the Second Circuit in Movielab, Inc. v. Berkey, *supra,* supported its result. Berkey exchanged its assets for $10,500,000 of Movielab's notes which were payable over a period of twenty years. Movielab sued Berkey under § 10(b)(5) and won in the District Court. In affirming the decision of the district court, the Second Circuit stated that it was not necessary for it to consider whether Rule 10(b)(5) applied to the issuance of "any check or note no matter how small the transaction, because notes issued by one publicly owned company to another publicly owned company for $10,500,000 payable over a period of twenty years, in exchange for assets of the latter easily fall within the purview of the Act." Id., at 663.

The district court acknowledged the distinctions implicit in the Second Circuit's decision, but found them unpersuasive. We are not faced with a situation such as confronted the *Movielab* court, and, in any event we are not

---

14. See footnotes 11 and 12.

bound by that decision.[15] We hold only that this particular transaction before us does not fall within the ambit of the federal securities law. This does not leave Lino without a remedy, however. The state courts presumably are available to hear his fraud contention.

## CONCLUSION

The order of the district court denying City Investing's motion to dismiss will be reversed. The case will be remanded to that court for it to dismiss the complaint. No costs.

15. Neither party has been able to suggest a "test" to us that would aid in determining whether there has been a purchase or sale of securities when a personal promissory note is involved. Each assures us that wherever the line is, he is on the safe side of it. The cases cited previously suggest that transactions involving a corporation's notes should be treated differently in some instances than similar transactions involving an individual's notes. In addition to Movielab v. Berkey, *supra*, compare Rekant v. Desser, *supra*; Lehigh Valley Trust Co. v. Central National Bank of Jacksonville, *supra*; MacAndrews & Forbes Co. v. American Barmag Corp., *supra*, with McClure v. First National Bank, *supra*; Joseph v. Norman's Health Club, Inc., *supra*; Janssen v. Tri-Pac Development, *supra*; and S. E. C. v. Fifth Avenue Coach Lines, Inc., *supra*. But see, Olympic Capital Corp. v. Newman, *supra*; Prentice v. Hsu, *supra*; *cf.* Whitlow & Associates, Ltd. v. Intermountain Brokers, Inc., *supra*.

But we do not have to rule on that distinction now. Nor are we determining that in other circumstances transactions involving personal notes do not constitute the purchase or sale of securities. The courts will have to consider the complete context of each transaction in making their determinations.