L.H.M., INC., a New Jersey corporation, et al., Plaintiffs,

v.

Jerry LEWIS et al., Defendants.

Civ. No. 1231–73.

United States District Court,
D. New Jersey.

Feb. 22, 1974.

Archer, Greiner & Read, by Charles W. Heuisler, Haddonfield, N. J., for plaintiffs.

Tomar, Parks, Seliger, Simonoff & Adourian, by Samuel Mandel, Camden, N. J., Pryor, Cashman & Sherman, by Joseph Z. Epstein, New York City, for defendant Jerry Lewis.

## OPINION

COHEN, Chief Judge:

Involved here is the application of federal securities law to determine whether this court has jurisdiction to resolve the instant controversy.

■ Plaintiff, L.H.M., Inc., is a New Jersey corporation formed by the individual plaintiffs for the express purpose of operating a "Jerry Lewis Cinema" franchise. Defendant Lewis is one of the originators and principal stockholders of the Network Cinema Corporation (Network), a Delaware corporation, which served as the franchisor of the theaters. Defendants Brittingham and Magistrate served as representatives of Network.[1]

On September 17, 1970, in reliance upon certain representations made by defendant Lewis in the media and in brochures supplied by Network, plaintiffs entered into a franchise agreement with Network to operate a "Jerry Lewis Cinema" in the Southern New Jersey area. Unfortuntely, the site selected by the "expert Real Estate Department" of Network proved to be inappropriate for the operation of a motion picture theater. The theater failed, and the individual and corporate plaintiffs were left in substantial debt.

Plaintiffs contend that they were induced to purchase the franchise by material misstatements of fact made by defendant Lewis, in violation of federal securities law, namely, section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b) [2] and Rule 10B–5 of the Securities and Exchange Commission, 17 C.F. R. 240.10b–5.[3]

Defendant Lewis moves to dismiss the complaint for lack of subject matter jurisdiction. Specifically, it is urged that the franchise agreement is not a "security" within the purview of the Exchange Act of 1934.

---

1. Though not served with process in the instant action, the court's decision is res judicata as to these defendants.

2. 15 U.S.C. § 78j(b) provides as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\*　　\*　　\*　　\*　　\*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

3. Rule 10b–5 provides as follows:

Employment of manipulative and deceptive devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon ay person,

in connection with the purchase or sale of any security.

Whether the franchise agreement in question is a "security" turns on whether the agreement can be classified as an "investment contract." [4]

 Plaintiffs urge this court to apply a so-called "risk capital" analysis,[5] in its attempt to characterize the present scheme. Although this novel approach is worthy of consideration by the Legislative Branch, this court is bound by the decisions of the United States Supreme Court and the Third Circuit Court of Appeals in resolving the present controversy.

In SEC v. Howey, 328 U.S. 293, 66 S. Ct. 1100, 90 L.Ed. 1244 (1946), the Supreme Court held that "an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party . . . .." *Id.* at 298–299, 66 S.Ct. at 1103.

Among those courts which have dealt with the issue, it has been held that in transactions where a franchisee is not required to make significant efforts in the operation of the franchise, in order to obtain the promised return, the franchise agreement will constitute an investment security. *See, e.g.,* Lino v. City Investing Co., 487 F.2d 689 (3d Cir. 1973); SEC v. Glenn W. Turner Enterprises, Inc., 474 F.2d 476 (9th Cir. 1973); State v. Hawaii Market Center, 52 Haw. 642, 485 P.2d 105 (1971). *See also* Securities Act Release No. 5211 (Nov. 30, 1971), 1971–72 Transfer Binder, CCH Fed.Sec.L.Rep. 98446 [Par. 78,446].

 Plaintiffs argue that their duties under the agreement were so nominal and insignificant that they were nothing but "glorified projectionists"; hence, they urge that the franchise constitutes an investment contract within the definition of SEC v. Howey, *supra,* and Lino v. City Investing Co., *supra.* However, an examination of the agreement and attached brochures leads this court to conclude otherwise.

While it is true that Network was to retain major control over the local "Jerry Lewis Cinema",[6] plaintiffs themselves

---

4. The Securities Act defines a "security" in two sections.
15 U.S.C. § 77(b)(1) states:
When used in this subchapter, unless the context otherwise requires—
(1) The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract,* voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. (Emphasis added).
15 U.S.C. 78c(a)(10) states:
The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate

or subscription, transferable share, *investment contract,* voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited. (Emphasis added).

5. Under this theory, where an investor subjects his money to the risks of an enterprise over which he exercises no managerial control, the basic economic reality of a security transaction is said to exist. Silver Hills Country Club v. Sobieski, 55 Cal.2d 811, 13 Cal.Rptr. 186, 361 P.2d 906 (1961).

6. Thus, for example, Network established uniform standards for the operation of the local theaters, as well as the right to select the films which were to be shown. How-

were required to make significant contributions to the operation and management of the theater. Thus, the franchisee was to assist in the planning and construction of a facility, or negotiate or enter into a lease for an appropriate building. Following a managerial training program offered by Network, the franchisee was to be responsible for local promotion and advertising, the maintenance of accurate business and tax records, the maintenance of the facility, grounds, and fixtures, as well as the securing and maintenance of insurance. Finally, the local franchisee had the responsibility to train and supervise any personnel which it might engage. Clearly, this is not a case where the franchisee's efforts would have little or no effect on the ultimate success or failure of the enterprise. Indeed, the failure of a franchisee to perform any one of its duties under the agreement could spell economic disaster for a local theater. SEC v. Glenn W. Turner Enterprises, Inc., *supra*; Lino v. City Investing Co., *supra*.

Plaintiffs also maintain that the motion to dismiss is premature in that a fuller factual exposition is required to determine the "substance and meaning" of the agreement. However, this court concludes that nowhere does the complaint "allege that the arrangements involved anything other than what was stated in the [franchise] documents." Lino v. City Investing Co., *supra* 487 F. 2d at 693.

This court having determined that the franchise agreement between L.H.M., Inc. and Network is not an investment contract, within the purview of the Exchange Act of 1934,[7] defendants'

motion to dismiss for lack of subject matter jurisdiction is granted.

An appropriate Order may be submitted.

---

ever, reservation of these rights by Network does not divest the franchisee of the obligation, and indeed the necessity, of making other significant, managerial decisions.

7. *Accord* Cobb v. Network Cinema Corp., 339 F.Supp. 95 (N.D.Ga.1972). In *Cobb*, the district court held that the Jerry Lewis Cine-

ma franchise did not constitute an investment contract for purposes of the Exchange Act. *Id.* 97–98. While the *Cobb* court's analysis differed somewhat from that mandated by the Third Circuit Court of Appeals in Lino v. City Investing Co., *supra*, the result is the same under either analysis.