**KLEIN, Leroy, and Hub Theatres Corp.**

**v.**

**ARLEN REALTY & DEVELOPMENT CORP. et al.**

Civ. A. No. 75–2243.

United States District Court, E. D. Pennsylvania.

March 30, 1976.

---

**1262**

Louis G. Hill, Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., for plaintiffs.

Judah I. Labovitz, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., for defendants.

### MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Presently before the court is the defendant's motion to dismiss the complaint and in the alternative to transfer or to stay the proceedings. The parties have submitted supporting and opposing affidavits which have been considered by the court. Hence, the motion shall be treated as one for summary judgment. We find that the complaint must be dismissed for failure to state a claim and for lack of subject matter jurisdiction. This determination moots the requests for transfer or stay.

Is a lease between a shopping center developer and a movie theatre enterpriser a "security" within the purview of the Securities Exchange Act of 1934, when the lease provides that the rent paid to the developer will consist of a flat fee plus a percentage of the gross receipts of the theatre? In 1970, National Features, Ltd., (NFL) executed six percentage leases for movie theatres in defendant's shopping centers. Plaintiff Klein executed and issued guarantees of these leases and made personal loans to National Features Ltd. NFL became insolvent before repaying Klein's loans. Klein formed HUB Theatres Corp. and assigned to it the theatre leases and equipment which had been assigned to him to secure his loans. The defendant

later instituted an action on a claim for back rent against the plaintiffs. This suit, *Arlen Realty and Development Corporation, et al. v. National Features, Ltd., et al.,* Court of Common Pleas of Montgomery County, Penna., No. 73–12448, is now pending. On December 4, 1973, the plaintiffs filed a counterclaim in the Montgomery County action which contained essentially the same factual allegation as in the present complaint, namely that the defendants induced the plaintiff into entering the lease agreement by means of false pretenses and fraudulent misrepresentations. The federal complaint alleges that the defendants' actions violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10(b)–5 promulgated thereunder. Clearly, the complaint states a cause of action for common law fraud. We think, however, that the negotiation of the percentage lease agreements was not within the scope of federal securities law.

In *SEC v. Howey,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), the Supreme Court stated:

"[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits *solely* from the efforts of a promoter or a third party . . . " 328 U.S. at 298–9, 66 S.Ct. at 1103, 90 L.Ed. at 1249 (Emphasis supplied)

The Court noted that the substantive business relationship between parties controlled whether an investment contract was present,

". . . regardless of the legal terminology in which such contracts are clothed." 328 U.S. at 300, 66 S.Ct. at 1104, 90 L.Ed. at 1250.

Thus, a franchise agreement, for example, may or may not be an investment contract depending upon whether the franchisee makes significant efforts in the operation of the enterprise. In *L. H. M., Inc. v. Lewis,* 371 F.Supp. 395 (D.N.J. 1974), *aff'd,* 510 F.2d 970 (3rd Cir. 1975),

it was held that an agreement to franchise a movie theatre was not an investment contract. The court found that the plaintiffs-franchisees were not passive investors, but had participated in the running of the movie theatre enterprise.

Klein's[1] theory of his economic relationship with Arlen is that Arlen, the lessor, has invested its land in the plaintiff's theatre business in the expectation of receiving a share of the theatre earnings. Apparently, Klein did not argue this theory until it filed its supplemental memorandum. The tenor of the complaint, although the question is not dealt with explicitly, is that Klein, not Arlen, was an investor and had been duped into committing his funds and a portion of the profits of the National Features, Ltd. in Arlen's venture. In his first reply memorandum Klein stated, discussing the *Howey* test:

> "This transaction meets the requirements of a common enterprise in the plaintiffs were 'attracted solely by the prospects of a return on their investment,' and such attraction to invest 'rested on the availability' of defendants management." Plaintiff's [First] Reply Memorandum, at 4.

Until Klein filed his supplemental memorandum, Arlen's featured counterargument was that Klein actively managed his theater enterprises and could not fairly characterize himself as a passive investor. Arlen primarily relied on its deposition of Klein to establish his multifaceted participation in the operation of the theatre, and to de-emphasize Arlen's role. When Klein advanced a new theory of the transaction—in which Arlen was the passive investor—Arlen replied that it had made, and was obligated to make in future, significant efforts on which depended the success of the shopping centers as integrated units; because the convenience and popularity of each shopping center affected the success of the movie theatre located within it, Arlen was not a passive investor. The affidavit of Moses Lebovitz was submitted to supply factual support for these contentions.

In considering Arlen's motion for summary judgment we must read the pleadings, affidavits, and exhibits in the light most favorable to Klein. Summary judgment cannot be granted if there is a genuine dispute about any material fact. *Lockhart v. Hoenstine,* 411 F.2d 455 (3rd Cir. 1969), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1970). The plaintiffs say that there are inconsistencies between Arlen's earlier arguments and supporting materials and its later ones, and that these contradictions by themselves raise a question of fact about the relative activity or passivity of Arlen in the movie theatre enterprise. We find, however, that there are no disputed facts which are material to the question whether the contract between the parties was or was not an investment contract within the purview of the Securities Exchange Act.

The materiality of the factual questions mentioned by Klein depends on which of two frames of reference we adopt. If Arlen's role was to be adjudged "passive" or "active" based solely on its participation in activities confined within the four walls of the movie theatres, we would indeed have to deny Arlen's motion. However, we think that the proper application of *Howey, supra,* and of *Lewis, supra,* requires us to consider all the essential elements of the business context in which the lease agreement is embedded. We think the record shows beyond dispute that Arlen, in its role as developer and manager of the shopping centers in which the leased movie theatre buildings were located, was not passive. Even if we say that Arlen "invested its land" in the Klein theatres, it is clear that this commitment was induced in part by Arlen's reliance on its own active role in designing and launching the centers and on its continuing role as overseer of center-wide services.

1. Hereinafter the plaintiffs will be referred to as Klein, and the defendants as Arlen.

This conclusion can stand some elaboration. Viewing the record in the most favorable light for Klein, we are faced with these facts. First, Arlen did not share in the internal management of any of the theatres. Klein was responsible for selecting, employing and supervising all employees; for promoting and publicizing the individual theaters; showing films; contracting for projection equipment; paying real property tax increases; maintaining public liability insurance; and maintaining the physical premises of the theatre and its immediate exterior. Second, it is undisputed[2] that Arlen was the primary actor responsible for the establishment of the shopping center. It collected data relating to site selection; assembled and acquired the parcel of land; negotiated financing; solicited tenants; and, initially at least, promoted the centers. Third, the lease agreement gives Arlen continuing obligations and prerogatives with regard to common area maintenance and design. Under Article V, Arlen retains some discretion to alter the shopping center common facilities—parking areas, driveways, truckways, delivery passages, loading docks, pedestrian sidewalks and ramps, access and egress roads, open and enclosed courts and malls, landscaped and planted areas, public rest rooms and other facilities. The lease deals with a number of specific contingencies that would involve the landlord in significant ways with the shopping center as a whole. For example, the landlord may decide to enclose any mall or common area. (Section 6.2) If it makes such an enclosure, however, it must construct heating and air-conditioning plants for controlling the interior environment. Arlen is also required to make external structural repairs to buildings.

Klein and Arlen bargained for a business relationship in which the fortunes of each depended in part on the activities of the other. Klein's customers would drive along roads, and park in lots built and maintained by Arlen, and subject to design modification by Arlen. The number of movie-goers which patronized the Klein theatres would depend in large part on the attractiveness of the centers in which they were located, including the physical plant, the drawing power of individual tenants to whom Arlen had rented other buildings, and the popularity of the overall selection of businesses made available at one site by the center's tenants. We have not been shown any reason not to rely on the lease agreement as evidence of the business arrangement contemplated by the parties, just as the *Lewis* court took into account the franchise agreement in that case, 371 F.Supp. at 397. Whatever factual disputes there may be about whether or not Arlen has lived up to its contractual obligations cannot be used to transform the nature of the agreement which was actually made.

We conclude that the record cannot support Klein's theory that its lease agreement was an investment contract in which Arlen committed its land to Klein's enterprises and passively awaited a share of the profits derived from Klein's use of the land.

---

**2.** A fact alleged in one affidavit is not put in dispute merely by referring to it in a counter affidavit as an "alleged" fact. We think that in the absence of an affidavit with a counter-assertion or a statement that could reasonably be interpreted as a denial, a fact subscribed to in an affidavit must be taken as undisputed. *Engl v. Aetna Life Insurance Co.,* 139 F.2d 469, 473 (2nd Cir. 1943).