A. B. PARVIN, Plaintiff-Appellant,

v.

DAVIS OIL COMPANY et al.,
Defendants-Appellees.

No. 74–1235.

United States Court of Appeals,
Ninth Circuit.

Oct. 20, 1975.

---

Peter M. Appleton (argued), of Tyre & Kamins, Los Angeles, Cal., for plaintiff-appellant.

Irwin I. Woodland (argued), of Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendants-appellees.

## OPINION

Before CHAMBERS and HUFSTED-LER, Circuit Judges, and FITZGER-ALD,* District Judge.

CHAMBERS, Circuit Judge:

Defendant Davis Oil Company (DOC) is a partnership, engaged in the business of gas and oil exploration. The partnership is composed of Marvin Davis and his parents, and has its principal place of business in Denver, Colorado. Plaintiff, Parvin, a California resident who has substantial experience with investment in oil and gas properties, first met the Davises in 1960 or 1961 when he purchased some properties in which they had an interest. After that time he maintained a periodic social and business relationship with them.

Involved in this case is Parvin's participation in three DOC oil and gas drilling ventures, referred to as the "Savoie," "Offset," and "Wildcat" programs. There is some dispute as to the circumstances surrounding Parvin's agreement to be a participant. In late 1967 or early 1968, Parvin-Dohrmann Co., of which plaintiff was chief executive, was hired to design and furnish DOC's new offices and to furnish Marvin Davis's home, both in Denver. Marvin Davis testified that while Parvin was in Denver in January and February 1968, the Davises obtained the lease for the Savoie program and invited Parvin to join them in the project. According to Mr. Davis, Parvin immediately agreed to participate. This agreement was not reduced to writing. Parvin denies that the meeting occurred and says that he first became interested in investing in DOC in August 1966 when he met Jack Davis in Los Angeles. Then, on February 20, 1968, Jack Davis telephoned him and offered him an interest in the Savoie program. Under either version, Parvin mailed $15,-000 to DOC in Denver on February 20. Marvin Davis acknowledged the receipt of plaintiff's check on February 27.

After the Savoie agreement, Jack and Marvin Davis met with Parvin twice in Los Angeles, but there was no indication that any significant discussion of Par-

* Honorable James M. Fitzgerald, United States District Judge for the District of Alaska, sitting by designation.

vin's participation in future DOC projects took place at that time. On July 1, 1968 Jack Davis mailed a letter to Parvin which mentioned an investment in some wells in Louisiana and said that further information would be sent to Parvin if he indicated an interest. On July 3, 1968, Davis sent Parvin duplicate originals of a written agreement, signed on behalf of DOC, selling Parvin an interest in the Offset wells. Parvin signed the agreement in Los Angeles and sent one executed copy back to Davis. Letter agreements on this project were handled in the same manner.

On July 24, 1968, Jack Davis wrote to Parvin in California offering him an interest in the Wildcat program and inclosing duplicate originals of a written agreement signed on behalf of DOC. Parvin wrote to the Davises questioning some aspects of the program and a meeting was arranged in Denver for August 3. At that meeting Wildcat was discussed and it appears that Parvin orally agreed to participate in the program at that time. On August 6, 1968, he mailed an executed copy of the agreement and his check from Los Angeles to the Davises in Denver.

Plaintiff subsequently brought suit against defendants for violation of the Securities Act of 1933, the Securities Exchange Act of 1934, and the California Corporations Code as it existed prior to January 1969. After trial, the district court dismissed the action. On appeal, plaintiff challenges the findings of the district court that: (1) the interests in the gas and oil leases involved in these transactions were not securities under federal and California law; (2) there were insufficient contacts with California to render these transactions subject to that state's laws; (3) the registration provisions of the Securities Act of 1933 did not apply to these transactions because they were private offerings. Error is also alleged in the court's refusal to admit certain evidence on the issue of the security status of the interests involved and in the failure of the district court to find a violation of the Securities Exchange Act of 1934 when defendants did not disclose the nonregistration of the interests and the failure to obtain a California permit.

## I. Were the Interests Securities?

In order for the federal or state securities law to apply to these transactions, the interests involved must have been securities. These interests were fractional interests in oil and gas leases where the seller of the interests would conduct oil exploration operations on the leased land. Both the federal and California statutes include a fractional interest in an oil or gas lease within the definition of a security. 15 U.S.C. § 77(b)(1); Corporations Code § 25008(a).[1] This circuit has not determined under what circumstances such a fractional interest is a security under federal law. Those other circuits which have considered the issue have held such an interest to be a security when the seller or a third party will conduct drilling operations on the land subject to the leases and it is from these operations that the buyer expects to derive his profit. *Nor-Tex Agencies, Inc. v. Jones*, 482 F.2d 1093 (5th Cir. 1973); *Gilbert v. Nixon*, 429 F.2d 348 (10th Cir. 1970).

▮ Further, this court has established a test for determining when an interest is an investment contract and, therefore, a security. *SEC v. Glen W. Turner Enterprises, Inc.*, 474 F.2d 476 (9th Cir. 1973). An interest in an enterprise is an investment contract where "the efforts made by those other than the investor are the undeniably signifi-

---

1. All references to "Corporations Code" refer to the 1949 version of the California Securities Law, Ch. 384, § 1, [1949], Cal.Stats. 698, as formerly codified at Cal.Corp.Code §§ 25000– 26104 (1955). These sections were replaced with the Corporate Securities Law of 1968, Cal.Corp.Code §§ 25000–25804 (Supp.1975), which became operative on January 2, 1969.

cant ones, those essential managerial efforts which effect the success or failure of the enterprise." Applying that test it is clear that the oil interests sold in this case are investment contracts and therefore securities under the law of this circuit. While Parvin and the other investors had some rights with regard to these operations including the right to decide whether to continue drilling past the casing point, the major decisions which would effect success or failure were made by the Davises. They selected the leases to be invested in, the sites to be drilled, and made the decision to commence drilling at any site. In addition they directed the drilling and exploration operations. Under the *Turner* test it is clear that the degree of control possessed by Parvin was not adequate to make the interest other than an investment contract.[2]

California law appears equally clear. That state's courts have continually held that fractional interests in oil or gas leases coupled with the seller's obligation to conduct an exploration or drilling operation are securities. *Oil Lease Service, Inc. v. Stephenson,* 162 Cal.App.2d 100, 327 P.2d 628 (1958). The district court was in error in holding that the interests sold were not securities under federal and California law.

## II. Should California Law Apply to These Transactions?

The district court held that even if the interests involved were securities under California law, that the transactions lacked adequate contact with California to make an application of that state's law proper. This was based on the determination of the district court that the portions of any of the three transactions that took place in California were not sufficient to amount to a sale or issuance of securities in California.

At the time of the transactions involved here, the California Securities Law provided:

> Every security of its own issue sold issued by any company without a permit of the commissioner then in effect authorizing the issuance or sale of the security is void.

Corporations Code § 26100.

The application of this section to sales by out-of-state issuers to California residents is unclear. Prior to 1947, the voiding provision applied only to securities issued in California, not to those sold in California. Under that wording, the Supreme Court of California in *Robbins v. Pacific Eastern Corp.,* 8 Cal.2d 241, 65 P.2d 42 (1937), held that the voiding provision did not apply to a transaction where there were negotiations in California but the actual delivery of the stock took place in New York. This opinion has been interpreted as saying that the former voiding provision would not apply unless there was an actual issuance or delivery of the stock in California. Loss, *The Conflict of Laws and the Blue Sky Laws,* 71 Harv.L.Rev. 209, 230–39 (1957). There has been no California Supreme Court opinion on the reach of the voiding provision now that the sale of stock is included in its terms.

■ There are two sources which aid in the interpretation of this provision. First, the California permit requirement with attached criminal penalties applied to both sales and issuance of stock in the state, even prior to 1947. Corporations Code § 25500. The statute defines sale for these purposes as including "an offer

---

**2.** In *United Housing Foundation v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621, 632 n.15 (1975), the Supreme Court declined to rule on the propriety of the test of investment contract adopted by this court in *Turner.* The interests involved in this case are securities either as a fractional oil lease coupled with an exploration operation or as an investment contract within the meaning of *Turner.*

to sell; an attempt to sell; a solicitation of a sale; an option of sale; a contract of sale . . ." Corporations Code § 25009(a). The decision under this section deal largely with whether preliminary negotiations or the giving of information amount to an offer or solicitation of a sale. *See e. g., B. C. Turf & Country Club, Ltd. v. Daugherty*, 94 Cal. App.2d 320, 210 P.2d 760 (1949); *People v. Rankin*, 169 Cal.App.2d 150, 337 P.2d 182 (1959). From these cases, however, it seems clear that where any statutory element of a sale takes place in California, its courts have been willing to apply injunctive relief or criminal penalties for failure to obtain a permit. The second aid in our interpretation of the amended voiding provision is the opinion of the California Court of Appeals in *Hardy v. Musicraft Records, Inc.*, 93 Cal.App.2d 968, 209 P.2d 839 (1949). In this opinion the court held void some securities which it found to be both sold and issued in California. This case was decided under the unamended "issue" version of the voiding provision and the court found issuance in the delivery of the securities in California. The court also treated the issue of whether there was a sale in California and found that when an agreement was drafted in New York and then sent to a California resident to sign and return to New York, there was a sale in California. Two recent district court opinions have interpreted the new voiding section in light of the prior *Robbins* decision to apply only where there is either the execution of a sales contract in California or delivery in that state. *See Robinson v. Cupples Container Co.*, 316 F.Supp. 1362 (N.D.Cal.1970) aff'd 513 F.2d 1274 (9th Cir. 1975); *Sandor v. Ruffer, Ballan & Co.*, 309 F.Supp. 849 (S.D.N.Y.1970).

 Applying these principles to the case before us, we cannot agree with the district court that California law should not apply to these transactions. While there are extensive Colorado contacts here and the parties did not intentionally seek to evade California law, there seems to be adequate contacts with California in this case to mandate application of the permit requirement. Here, the second sale of stock was almost identical to the situation in *Hardy*. The agreement was drafted without a prior meeting in Denver, and then sent to Parvin who signed it and returned it to Denver. The sending of this agreement into California, its signing there by Parvin, and its return constitute a sale of securities in California. The third transaction is similar to the second except that before Parvin signed the agreement in California there was a meeting between the parties in Denver. Even if all of the terms of the agreement were settled upon orally in Denver, the prior sending of the agreement to Parvin and his subsequent signing of it in California constitute a sale of securities in California. The first transaction presents the most difficult question. There was an oral agreement between the parties in Denver and no written agreement was executed. As the purpose of the California Securities Law is to protect investor-residents, we consider that the payment by Parvin in the form of a check mailed from California, constituted a sale of securities in California so as to apply the voiding provision. The extent of the transactions contacts with Colorado is irrelevant. The question is not one of which jurisdiction's law ought to apply based on the greatest number of contacts, but rather whether the appellees by their actions brought themselves within the scope of the California Securities Law. We find that they did.

III. Do the California Joint Venture Exemption and the Federal Private Offering Exemption Apply to these Transactions?

Since we have found that the interests involved were securities under federal and California law and that the transactions were sales within California, the question remains whether any exemptions apply to render the state permit requirement or the federal registration requirement inapplicable.

■ Corporations Code § 25100 exempts from the permit requirement securities which are bona fide joint venture interests and which are not offered for sale to the public. The district court held that the interests in this case were not securities and it specifically did not reach the issue of whether a joint venture exemption would apply. While the district court did make comments on the joint venture issue, it did not make findings on the relevant factual issues or make a ruling on the application of this exemption. Because we have held these interests to be securities, their exempt status is relevant to a final determination of this case. Therefore, on remand the district court should consider whether these securities qualify for a joint venture exemption.

■ The district court found that the private offering exemption applied to the transactions in this case and therefore the Securities Act of 1933 did not require their registration. The Supreme Court in *SEC v. Ralston Purina Co.,* 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953), set out the requirements of the private offering exemption. A private offering is one where the investors do not need the protection of the Act because they already have access to the kind of information that would be contained in a registration statement. Investor sophistication alone is inadequate, there must also be demonstrated the requisite access to information. Borton & Rifkin, *Private Placement and Proposed Rule 145,* 25 Hastings L.J. 287, 295–303 (1974). While the district court found in this case that Parvin was a previous investor in gas and oil properties and that by the terms of the agreements he had access to some information, the findings of the court do not indicate whether Parvin had full access to the sort of information that would have appeared in the registration statement. Absent a determination of this issue, there can be no ruling on whether the private offering exemption applies. On remand the district court should make more specific findings as to what information Parvin had as an experienced investor and what information he could obtain under the terms of the agreement.

■ Appellants argue that the district court erred in failing to find that the nondisclosure of the lack of a permit and nonregistration of the securities violated the Securities Exchange Act of 1934. Since we have made no determination as to whether registration or a permit are required, any ruling on this alleged violation would be premature.

Reversed and remanded for proceedings consistent with this opinion.