Bernardo J. PENTURELLI

v.

SPECTOR COHEN GADON & ROSEN P.C., et al.

Civ. A. No. 84–6124.

United States District Court, E.D. Pennsylvania.

Feb. 14, 1985.

Henry H. Janssen, Philadelphia, Pa., for plaintiff.

Patrick T. Ryan and Peggy L. Snodgrass, Philadelphia, Pa., for Ely & French.

Allan Windt, Philadelphia, Pa., for Spector, et al.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff Bernardo J. Penturelli filed this action on December 13, 1984, alleging that defendants defrauded him on December 15, 1978, when he subscribed for and purchased 28 fractional undivided working interests in the Addison Development, a program whereby a limited number of persons would sublease certain rights to mine and remove all mineable and merchantable coal from specific seams of coal situated within Addison Township, Somerset County, Pennsylvania. Plaintiff Penturelli seeks recovery from twenty-five defendants who played various roles in the Addison Development project under the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, ("the '33 Act"), the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, ("the '34 Act"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), and state common law.

Presently pending are eight motions to dismiss. Defendants have asserted a number of grounds for dismissal including lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. I will review each basis for dismissal *in seriatim.*

In deciding a motion to dismiss, I must accept as true all factual allegations made in the complaint and must resolve all reasonable inferences to be drawn from those allegations in the light most favorable to plaintiff. Dismissal is appropriate only when it appears beyond a doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

*Statute of Limitations*

Defendants' first contention is that the statute of limitations had expired before plaintiff filed this action. Plaintiff alleges that he was defrauded in December of 1978. Defendants assert that Pennsylvania "blue sky" statute of limitations as embodied in 70 P.S. § 1–504(a) should govern this action because no federal statute provides an applicable limitations period. Section 504(a) states in pertinent part:

No action shall be maintained to enforce any liability created under section 501 ... unless brought before the expiration of three years after the act or transaction constituting the violation or the expiration of one year after the plaintiff re-

ceives actual notice or upon the exercise of reasonable diligence should have known of the facts constituting the violation, whichever shall first expire.

 Application of section 504, however, presumes that there is a private cause of action under the Commonwealth's "blue sky" law comparable to that raised by the plaintiff under the federal securities acts. As defendants all note, 70 P.S. § 1–401 closely parallels the federal section 10(b) under which plaintiff is proceeding in part, but the sole source of civil liability for any act in violation of section 401 is found in section 501, which provides in pertinent part:

(a) Any person who ... offers or sells a security in violation of sections 401, 403, 404, or otherwise by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading ... shall be made liable to the persons purchasing the security from him ...

(b) Any person who purchases a security in violation of sections 401, 403, 404 or otherwise by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, ... shall be liable to the person selling the security to him...

Although these sections give a cause of action to defrauded sellers and buyers, they only give the seller or buyer the right to sue the person purchasing or selling the security. In other words, the Pennsylvania securities statute grants a private remedy to a buyer only against his seller. When there is no private remedy under the state securities statute, but there is a common law fraud action, the federal court must look to the Commonwealth's statute of limitations for common law fraud.

Applying exactly this type of analysis, the Third Circuit, in *Biggans v. Bache Hal-*

*sey Stuart Shields, Inc.,* 638 F.2d 605, 610 (3d Cir.1980), held that the Commonwealth's six year statute of limitations for common law fraud applied to a § 10b action against a brokerage house which handled securities transactions for the plaintiff. Similarly, in *Sharp v. Coopers & Lybrand,* 649 F.2d 175 (3d Cir.1981), the court held that the common law fraud statute of limitations of six years governed a suit for securities fraud brought by a purchaser of a limited partnership in an oil-and gas-drilling venture against an accounting firm which prepared an opinion letter outlining the tax treatment of investors.

The key question here is which of the defendants, if any, were sellers of the alleged securities involved. Such a determination probably involves a factual determination which is not appropriately made on a motion to dismiss. Furthermore, I am not sure, as defendants contend, that a mere allegation of privity by plaintiff between himself and each defendant is enough to make each defendant a seller for purposes of the securities acts. *See Lewis v. Walston & Co.,* 487 F.2d 617 (5th Cir.1973) (whether the person was the proximate cause of the sale); *Hill York Corporation v. American International Franchises,* 448 F.2d 680 (5th Cir.1971) (Did the injuries to plaintiff flow directly and approximately from the actions of the defendant?). Because there is another ground upon which I must dismiss plaintiff's claim under the Federal Securities Acts, it is unnecessary for me to resolve the issue of the statute of limitations at this time.

*Definition of Security*

Defendants also contend that plaintiff fails to state a cause of action under the Federal Securities Acts because this action does not involve the sale or purchase of a security. The crux of defendants' position is that plaintiff, as an investor in the Addison Development, retained too much managerial control and responsibility to be treated as a passive investor entitled to protection under the Federal Securities Acts.

 In response, plaintiff stated that his interest in the Addison Development was a

fractional undivided working interest in a coal mine which by definition is a security.[1] Although the definitional section of the federal securities acts does imply that a fractional undivided working interest in mineral rights is a security, employment of the phrase "fractional undivided working interest" alone is not enough to establish that the interest is a security. In *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) the Supreme Court rejected a literal approach to determining whether an interest is a security:

> We reject at the outset any suggestion that the present transaction, evidenced by the sale of shares called "stock," must be considered a security transaction simply because the statutory definition of a security includes the words "any ... stock."

Instead, the Court stated, a court must look to the economic reality of the interest to determine " 'whether the scheme involved an investment of money in a common enterprise with profits to come solely from the efforts of others' ". *Id.* at 852, 95 S.Ct. at 2060 (quoting *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946)).[2]

In *SEC v. Howey*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) the Court held that the offering of units of a citrus grove development coupled with a contract for cultivating, marketing and remitting the net proceeds to the investor was an offering of an investment contract within the meaning of the '34 Act. In so holding, the Court set forth the test to be applied, the key element of which is, for this case, whether the profits were to come solely from the efforts of others. Contending that the profits to be derived from the Addison Development depended upon the efforts of the promoters and developers, plaintiff correctly notes that the Third Circuit has refused to read the word "solely" literally. When applying the *Howey* test in *Lino v. City Investing Co.*, 487 F.2d 689, 692 (3d Cir.1973), the court held that an investment contract "can exist where the investor is required to perform some duties, as long as they are nominal or limited" and would have "little direct effect upon receipt by the participant of the benefits promised by the promoters." The court therefore rejected the literal approach. But, as the *Lino* court expressly noted, an investor's duties and responsibilities must be nominal or limited. Because the investors in *Lino* were required to make significant efforts to ensure the success of the project, the plaintiff's interest was not a security.

Similarly, in *Goodwin v. Elkins & Co.*, 730 F.2d 99 (3d Cir.1984), the court held that a federal securities claim was properly dismissed when plaintiff's claim was based on the contention that his interest in a brokerage firm partnership was a security. Writing separately, the three judges of the panel agreed that the plaintiff's interest

---

1. Section 2(1) of the 1933 Federal Securities Act, 15 U.S.C. § 77b(1) includes within its definition of security: "Any fractional, undivided interest in oil, gas or other mineral rights ..." Section 3(a)(10) of the 1934 Federal Securities Act, 15 U.S.C. § 78c(a)(10) defines security to include "Any ... certificate of interest or participation in ... any mineral royalty or lease ..."

2. Plaintiff relies on *Ruefenacht v. O'Halloran*, 737 F.2d 320, 337–339 (3d Cir.1984) in support of his contention that if it is concluded that the Addison Development fractional undivided interests are "securities" as expressly defined in the statutory sections, the *Howey* standards need not be applied. In *Ruefenacht*, however, the court held that the sale of all or part of business effectuated by transfer of stock bearing traditional incidents of stock ownership is the sale of a "security." The court noted that the instruments in issue, as a matter of economic reality, had the attributes commonly associated with stock and therefore, the standards of *Howey* need not be applied. The holding of *Ruefenacht* must be confined to its facts because the court was concerned with the unique instrument known as a "stock" which has developed easily identifiable characteristics. Fractional undivided interests like interests in Addison Development are much more amorphous taking on different characteristics in different projects. *See Parvin v. Davis Oil Company*, 524 F.2d 112 (9th Cir.1975). Therefore, in a case such as this one, it is necessary to look beyond the literal language and apply the *Howey* standard to determine whether plaintiff's interest was a security.

was not a security despite plaintiff's contentions that he was, in reality, vested with so little power and responsibility that the managing partner and management committee had effective control. The court focused instead on plaintiff's legal status as a partner both under the Pennsylvania Partnership Act and the Partnership Agreement for Elkins & Co. "[A]s we have noted, however, whether a partnership interest constitutes a security depends on the legal rights and powers enjoyed by the investor." 730 F.2d at 107. In their concurring opinions, former Chief Judge Seitz and Judge Becker concluded that the actual allocation of management power in the partnership, as defined in the Partnership Agreement, accorded general partners a greater degree of participation than permitted a "passive investor" as defined in *Howey*. Similarly, in *Fargo Partners v. Dain Corp.*, 540 F.2d 912 (8th Cir.1976), the court held that plaintiff's interest in an apartment complex was not a security even though plaintiff entered into a management contract with vendors because plaintiff retained the right to fire the manager on thirty days' notice.[3]

In this case, plaintiff Penturelli purchased twenty-eight of the sixty undivided fractional interests in Addison Development for $560,000 in cash and $1,330,000 in non-recourse notes. The sale of the interests was made pursuant to a prearranged program, as described in the preliminary private placement memorandum, in which Ashley Mining retained a develop-

ment contract and other defendants retained prearranged operating contracts.[4] Plaintiff, however, was a co-owner of the Addison Development and enjoyed legal rights and powers beyond those of a passive investor. As stated in the preliminary private placement memorandum, the consent of the co-owners was needed before the operating manager could take any major action with respect to the development (p. 11) and the liability of the co-owners was not limited by the nature of the organization (p. 9). Furthermore, the operating manager was not empowered to make any major decisions concerning the development, to borrow money or execute notes binding the co-owners or make any management decision or any expenditure outside the ordinary course of business until after consultation with the co-owners and the consent of co-owners owning more than 50% of the interests. Co-owners also had the power to remove the operating manager by a vote of co-owners owning more than 50% of the interests. (p. 40). According to the preliminary private placement memorandum, each co-owner could reserve his proportionate share of the coal actually mined and "sell for his own account and on such terms as he sees fit." (p. 41). Control of this type by a owner of interest in the Addison Development affords the investor considerable means by which to protect his original investment. The federal securities acts were intended to protect passive investors and to restore investors' confidence in the financial markets, but

---

**3.** In support of his contention that his fractional undivided interest in Addison Development constitutes a security, plaintiff relies on *Parvin v. Davis Oil Company*, 524 F.2d 112 (9th Cir.1975) in which the court held that fractional undivided interests in oil and gas wells were securities. Noting that both the state and federal securities acts included fractional undivided interests in oil leases within the definition of security, the court nevertheless applied the *Howey* test to determine whether the interest was an investment contract and therefore a security. In doing so, the court noted that there are no fixed circumstances under which a fractional interest is a security under federal law. *Id.* at 115. Therefore, the *Parvin* court examined the facts giving rise to the particular investment interest

and the responsibilities and powers the investor retained.

**4.** In his memorandum of law, plaintiff objects to defendants referring to the "final private placement memorandum" in support of their motions to dismiss on the grounds that it cannot be used as evidence in support of a motion to dismiss. I have made reference to a "preliminary private placement memorandum" which plaintiff attached to his memorandum in opposition to the motions to dismiss. At oral argument, counsel for plaintiff stated that he had no objection to my considering this document as a part of the original complaint. Reference is also made to this document in plaintiff's complaint (paragraphs 29 and 30).

Congress did not intend to provide a broad federal remedy for all frauds. *Marine Bank v. Weaver*, 455 U.S. 551, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1981).

In addition to the provisions pertaining to plaintiff's role already cited from the preliminary private placement memorandum, plaintiff, along with the other co-owners, could terminate the Development Contract with Ashley Mining upon 30 days' notice (Exhibit "E", § 9), terminate the Mining Services Contract by a vote of the majority of interests at any time, with or without cause, upon 90 days' notice (Placement Memorandum, Exhibit "H", Mining Services Contract § 7b. Plaintiff owned 47% of all of the interests to be had in the Addison Development. Furthermore, throughout the preliminary private placement memorandum, investors such as plaintiff were referred to as co-owners. Plaintiff's role in the Addison Development was that of an active participant rather than a passive investor. Plaintiff's co-ownership interest therefore is not an investment contract protected by the federal securities act, and plaintiff's claim therefore must fall for failure to state a claim under those laws.

RICO

Plaintiff also alleged that the defendants have violated RICO. Section 1962(c) of RICO provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...

19 U.S.C. § 1962(c). Section 1964 provides that "any person injured in his business or property by reason of a violation of section 1962 ... may sue therefore ... and shall recover three-fold the damages he sustains...." 19 U.S.C. § 1964(c). Plaintiffs

allege that defendants have participated in the conduct of the Addison Development ("the enterprise") through a pattern of racketeering activity within the meaning of RICO.

██ Plaintiff, however, has not sufficiently alleged any injury by reason of a violation of section 1962 as required by section 1964(c). As the Second Circuit recently held in *Sedima, S.P.R.L. v. Imrex Company, Inc.*, 741 F.2d 482 (2d Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985), in order to maintain a civil RICO action, a plaintiff must allege both (1) an injury different in kind from that occurring as a result of the predicate acts themselves, that is not simply caused by the predicate acts themselves but also caused by an activity which RICO was designed to deter and (2) defendants' prior criminal conviction on one of the predicate acts. As the *Sedima* court stated, "[T]here is simply no evidence that in creating RICO, Congress intended to create the broad civil cause of action that the reading of the statute given by its proponents would allow." 741 F.2d at 487. RICO was designed "to protect legitimate businesses against the syndications's infiltration. It was an attempt to deal with organized crime as an economic phenomenon." *Id.* See also *Kronish v. Smith Barney Harris Upham & Co., Inc., et al.*, No. 84–4182, slip op. (E.D.Pa. February 5, 1985); *Bernstein et al. v. Bank Luemi Le-Israel B.M. et al.*, No. 84–2065, slip op. (E.D.Pa. Dec. 5, 1984); *Zap v. Frankel*, No. 84–2817 (E.D.Pa. Nov. 26, 1984); *Gardner v. Surnamer*, 599 F.Supp. 477 (E.D.Pa.1984). Because plaintiff has failed to allege that his injury was caused by an activity different from that caused simply by the alleged predicate acts or the prior RICO criminal convictions of defendants for the conduct invoked in this civil action, the RICO claim must be dismissed.[5]

---

5. The recent Third Circuit decision in *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3d Cir.1984) upon which plaintiff relies, is not dispositive of the present controversy because it involved the resolution of very different issues. In reversing the dismissal of the RICO claim, the Third Circuit limited its focus to the particularity rule of Fed.R.Civ.P. 9(b) and the elements which must be satisfied in pleading the existence of the civil

*State Claims*

In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court stated:

> Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that state issues predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

Because plaintiff's federal securities and RICO claims must be dismissed, plaintiff's pendent state law claims should also be dismissed.

RICO provision or what constitutes a sufficient injury to invoke the treble damages provision of the statute.