Bernardo J. PENTURELLI

v.

SPECTOR COHEN GADON & ROSEN, et al.

Civ. A. No. 84–6124.

United States District Court, E.D. Pennsylvania.

July 16, 1986.

Henry H. Janssen, Philadelphia, Pa., for plaintiff.

Patrick T. Ryan and Peggy L. Snodgrass, Philadelphia, Pa., for Ely & French Associates, Inc. and Richard C. Ely.

Eugene J. Maginnis, Jr., Philadelphia, Pa., for Alan T. Schiffman and Alan T. Schiffman & Co.

Norbert F. Bergholtz, Philadelphia, Pa., and David E. Tungate, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for Fetterolf Mining, Inc., Fetterolf Group, Inc., Estate of Myron F. Fetterolf, Louis T. Flori, Anthony A. Dalessandro and Mark Mining No. 2, Inc.

Allan D. Windt, Philadelphia, Pa., for Ashley Mining Co., Inc., Balance Sec. Programs, Inc., Spector Cohen Gadon & Rosen, Edward Cohen, Betsy Cohen, Stephen Sokolic, Richard Abt, Steven F. Gadon and George S. Mack.

Thomas J. Ziomek, David E. Sandel, Jr. and Allan D. Windt, Philadelphia, Pa., for Donald R. Sarp and Donald R. Sarp & Co.

G. Wayne Renneisen and William F. Kiniry, Jr., Philadelphia, Pa., for Herr, Nicholas & Co. and Robert R. Herr.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff Bernardo J. Penturelli filed this action on December 13, 1984, claiming that he had been defrauded in the purchase of twenty-eight fractional undivided interests in the Addison Development, a coal mining operation in Pennsylvania whereby a limited number of persons would sublease certain rights to mine and remove all mineable and merchantable coal from specific seams of coal situated within Addison Township, Somerset County, Pennsylvania. Penturelli filed this action against twenty-five defendants who played various roles in the Addison Development project, alleging causes of action under the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, (" '33 Act"), the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, (" '34 Act"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), and state common law.

By memorandum and order dated February 14, 1985, 603 F.Supp. 262, I granted defendants' motions to dismiss on the grounds that there was no security giving rise to a claim under the '33 or '34 Acts and plaintiff had failed to allege that his injury was caused by an activity different from that of the alleged predicate acts or prior RICO criminal convictions. In light of new Supreme Court holdings, the Third Circuit reversed in an opinion dated December 18, 1985. Defendants have now renewed their motions to dismiss claiming that plaintiff's claims are barred by the applicable statutes of limitations and that plaintiff's RICO claim fails to state a claim. I will address the issues raised in defendants' motions *seriatim.*

*Securities Claim—Statute of Limitations*

Defendants contend that plaintiff's claim pursuant to section 10(b) of the '34 Act is untimely. The '34 Act, unlike the '33 Act, contains no statute of limitations. In the

absence of an express statute of limitations in a federal statute, it is necessary to turn to the law of the forum state to determine the appropriate limitations period. *See Biggans v. Bache Halsey Stuart Shields*, 638 F.2d 605 (3d Cir.1980); *Engl v. Berg*, 511 F.Supp. 1146 (E.D.Pa.1981). The key issue here is which state statute of limitations should be applied.

There are two possibilities. The first possibility is the statute of limitations set forth in the Pennsylvania Securities Act, 70 Pa.Stat.Ann. § 1–504(a). Section 504(a) provides that:

No action shall be maintained to enforce any liability created under section 501 (or section 503 as far as it relates to that section) unless brought before the expiration of three years after the act or transaction constituting the violation or the expiration of one year after the plaintiff receives actual notice or upon the exercise of reasonable diligence should have known the facts constituting the violation, whichever shall first expire.

Defendants contend that this provision should be applied and that it sets an absolute limit of three years which plaintiff failed to meet in filing this action. The alternative statute of limitations is that which governs state common law fraud actions. The Third Circuit recently held that for common law fraud actions accruing before February 1983, the limitations period is six years. *See A.J. Cunningham Packing Corp. v. Congress Financial Corp.*, 792 F.2d 330 (3d Cir.1986). In *Cunningham*, the court specifically rejected the two year period which several courts had suggested was appropriate. The court concluded that the tort of "taking, detaining, or injuring personal property," which is governed by a two year statute of limitations under the 1976 amendments, 42 Pa. Cons.Stat.Ann. § 5524(3), does not encompass a claim for fraud. *Id.* at 334. Therefore, if I conclude that the appropriate statute of limitations is that which governs common law fraud claims in Pennsylvania, it is clear that plaintiff's claim is timely. The earliest point at which plaintiff's cause of action could have accrued was December

15, 1978; this action was filed on December 13, 1984, two days before the six year period would have run.

The difficult issue, therefore, is which of these two statutes of limitations governs in this case. Defendants, of course, contend that the statute of limitations contained in the Pennsylvania Securities Act governs. In *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir.1979) and *Biggans v. Bache Halsey*, 638 F.2d 605 (3d Cir.1985), the court held that the relevant inquiry is whether the action would be time-barred if it has been brought in state court; implicit in the inquiry is whether state law provides a similar cause of action. Application of 70 Pa.Stat.Ann. § 1–504(a), therefore, is appropriate only if there is a private cause of action under the Pennsylvania Securities Act comparable to that raised by plaintiff under section 10(b) of the '34 Act.

Section 401 of the Pennsylvania Act closely parallels section 10(b) of the '34 Act under which plaintiff is proceeding. However, as the *Biggans* court noted, the sole source of civil liability for any acts in violation of section 401 is section 501 of which provides in pertinent part:

(a) Any person who ... offers or sells a security in violation of sections 401, 403, 404, or otherwise by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading ... shall be made liable to the persons purchasing the security from him ...

(b) Any person who purchases a security in violation of sections 401, 403, 404 or otherwise by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, ... shall be liable to the person selling the security to him ...

These provisions give a private cause of action only to a seller or a buyer to sue the person buying or selling the security. Therefore, in *Biggans,* there was no state cause of action because plaintiff was suing his broker not the individuals who brought the securities from him or the person from whom he purchased the securities. Therefore, because there was no comparable state cause of action, the statute of limitations set forth in section 504 did not apply. The residual six year statute applied, and the court found plaintiff's action to be timely.

Pointing to paragraph 37 and 49 of the complaint, defendants contend that plaintiff has alleged that each defendant was a seller in that each shared in the proceeds of the fraud committed on plaintiff. However, after reviewing these two paragraphs, I do not believe that plaintiff has specifically alleged that any one of the defendants was a seller of the fractional undivided interests. Rather, he has alleged that each defendant worked in one capacity or another on behalf of the seller, e.g. as attorneys, accountants, or mining experts.

Defendants contend that a civil action exists against aiders and abettors or agents pursuant to section 503 of the Pennsylvania Securities Act, 70 Pa.Stat.Ann. 1–503(a). Section 503(a) states in pertinent part:

> Joint and several liability, contribution, corporation's right of indemnification
>
> (a) Every affiliate of a person liable under section 501 or 502, every partner, principal executive officer or director of such person, every person occupying a similar status or performing similar functions, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the acts or transaction constituting the violation, are also liable jointly and severally and to the same extent as such person, unless the person liable hereunder proves that he did not know, and in the exercise of reasonable care would not have known of the existence

of the facts by reason of which the liability is alleged to exist.

Subsection (b) provides for a right of indemnity and contribution given the joint liability established in section (a). Defendants contend that this provision establishes a private cause of action under which a person in plaintiff's position could proceed. There have been no cases under which a person, a buyer or seller, has sued under section 503 an individual aiding or abetting a seller or buyer. It appears that the section only establishes a cause of action in favor of a party who has been held liable to a private party under section 501.

Support for the position that section 503 does not provide a cause of action to a buyer against an aider or abettor is found in several cases. First, in *Biggans,* Judge Sloviter noted that the sole source of civil liability for any acts in violation of section 401 is found in section 501. 638 F.2d at 609. At the time *Biggans* was decided, section 503 was in effect and it would arguably have governed a case against a broker. In *Sharp v. Coopers & Lybrand,* 649 F.2d 175, 191–92 (3d Cir.1981), the court again held that the Pennsylvania Securities Act grants a private remedy to a buyer only against his seller. Similarly, in *Zawid v. Elkins & Co.,* 33 D. & C.3d 185 (1982), the court held that the Pennsylvania Securities Act does not afford a private cause of action against a broker who is trading on accounts of others and thus is neither a buyer or seller subject to civil suit under the Act.

Defendants rely on *Brennan v. Reed, Smith, Shaw & McClay,* 450 A.2d 740, 746 (Pa.Super.1982) in support of their contention that section 503 would provide plaintiff with a cause of action. In *Brennan,* the court held that an action against a plaintiff's former attorney for alleged malpractice in causing or failing to prevent violations of the Securities Act was valid and proper under section 503. However, in *Brennan,* the plaintiffs were individuals who had already been held liable for violations of the Securities Act as sellers of partnership interests. Plaintiffs filed suit

against the attorneys who handled the establishment of the partnership for malpractice. I do not find *Brennan* to be particularly relevant to the present issue. Moreover, I believe that the court's conclusion in *Biggans* that the sole source of private causes of action is 501 is correct.

The Spector, Cohen defendants have, at the last minute, advanced a rather novel argument based on the decisions in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985) and *Malley-Duff & Associates, Inc. v. Crown Life Insurance Co.*, 792 F.2d 341 (3d Cir.1986). In *Wilson v. Garcia*, the Court held that, to avoid uncertainty and time-consuming litigation, a single, broad characterization of all § 1983 claims for selecting the appropriate statute of limitations best fits the statute's remedial purposes. 105 S.Ct. at 1945. Following this reasoning, the court in *Malley-Duff*, held that all civil RICO cases should be characterized uniformly and that the state limitations period most appropriate for all civil RICO claims should be applied. The court concluded that for RICO claims arising in Pennsylvania, the six year residual statute of limitations would govern.

Defendants contend that based on the analysis applied in *Wilson v. Garcia* and *Malley-Duff*, the issue of whether a particular defendant can be held liable under the Pennsylvania Securities Act is no longer relevant. Instead, defendants contend that the courts must select the statute of limitations most appropriate for all federal securities claims. Therefore, they contend, the issue before me is which Pennsylvania statute of limitations is most "analogous" to the plaintiff's federal securities law claims: the statute of limitations found in the Pennsylvania Securities Act or Pennsylvania's "catchall" statute of limitations.

To reach the conclusion defendants suggest would be to fly directly in the face of the holdings of the Third Circuit in *Sharp v. Coopers & Lybrand*, 649 F.2d 175 (3d Cir.1981); *Biggans v. Bache Halsey Stuart Shields*, 638 F.2d 605 (3d Cir.1981). More importantly, I do not believe that the Supreme Court or the Third Circuit intended the uniform characterization approach developed in *Wilson v. Garcia* to govern all cases in which federal law provides the rule of decision. Rather, uniform characterization is an approach to be applied where there can be no precise counterpart in state law for the federal cause of action. A claim pursuant to § 1983 has no precise counterpart in state law, and as the *Malley-Duff* court noted, "Civil RICO is as far removed from any traditional state cause of action as is § 1983." at 347.

Actions under the federal securities acts, however, do not present the same problem. Parallel actions do exist under state law. Applying Pennsylvania law, a buyer or a seller has an action against his or her seller or buyer; if the federal action is similar, the Pennsylvania securities act statute of limitations is applied. If the defendant is not a buyer or seller, the residual six year statute of limitations is applied. There is not the same uncertainty as governs actions under § 1983 and RICO. Accordingly, I will decline defendants' suggestion that I expand the analysis of *Wilson v. Garcia*, and *Malley-Duff* to the area of securities law. Therefore, because I do not believe that plaintiff would have a cause of action under the Pennsylvania Securities Act, the statute of limitations set forth in section 504 is inapplicable and plaintiff's claim is timely under the six year statute of limitations governing claims for common law fraud.[1]

---

1. Even if I were to conclude that the statute of limitations provided in section 504 of the Pennsylvania Securities Act governed this action, the motions to dismiss would have to be denied. When a state limitations period is being applied, the question of when a limitations period begins to run is an issue to be determined under federal law. *Engl v. Berg*, 511 F.Supp. 1146 (E.D.Pa. 1981). Plaintiff has alleged that there was fraudulent concealment by the defendants which precluded his learning of the alleged fraud until, according to the complaint, 1984. Complaint ¶ 40. Applying the principle of equitable tolling, the one year limitation set forth in section 504 would not start to run until plaintiff reasonably should have known of the alleged fraud. There is a genuine issue of fact as to when plaintiff learned or should have

### RICO claim—Statute of Limitations

■ Defendants also contend that plaintiff's RICO claims are untimely. Their motions are based on the theory that the analogous state cause of action is common law fraud, and the appropriate statute of limitations is two years. In *Malley-Duff v. Crown Life Insurance Co.*, 792 F.2d 341 (3d Cir.1986), however, the court held that all civil RICO claims would be governed by the residual six year statute of limitations. 42 Pa.Cons.Stat.Ann. § 5527. Relying on the Court's analysis in *Wilson v. Garcia*, 105 S.Ct. 1938 (1985), the court held that in borrowing state limitation periods for civil RICO claims, the court must select the state period most appropriate for all civil RICO claims. The court then held that the six year period was most applicable to all RICO claims. Therefore, defendants' theory as to plaintiff's RICO claim fails.

### Failure to Differentiate Among Defendants

Defendants contend that plaintiff's complaint should be dismissed because plaintiff has failed to differentiate among defendants. Although I agree that plaintiff's complaint could be more specific, I do not believe that it would be appropriate to dismiss the complaint. Defendants will be able to force plaintiff to flesh out his theories against each of them through full and complete discovery.

### Failure to State a Rico claim

■ Finally, defendants contend that plaintiff's complaint fails to state a RICO claim because it does not allege properly a pattern of racketeering activity. A "pattern of racketeering activity" is defined in the RICO state as follows:

> "[P]attern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

18 U.S.C. § 1961(5). Plaintiff has alleged a series of misrepresentations and omissions constituting securities fraud, interstate transport of stolen property and mail fraud. Defendants contend that each of these acts were part of a single transaction or scheme and therefore cannot constitute a pattern of activity for purposes of RICO.

In *Sedima S.P.R.L. v. Imrex Co.*, —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) the Court, in a footnote stated that:

> The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." (citation omitted).

105 S.Ct. at 3285, n. 14. The "continuity plus relationship" language has created some confusion and leads defendants here to argue there must be more than one transaction or scheme to give rise to a

---

learned of the fraud, an issue which cannot be resolved on a motion to dismiss or for summary judgment.

Defendants argue that the federal equitable tolling doctrine has no application in this case and that the statute of limitations in section 504 should be strictly construed. In support of this contention, defendants rely on *Walck v. American Stock Exchange*, 687 F.2d 778, 792 (3d Cir. 1982), *cert. denied*, 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983), in which the court held that equitable tolling would not apply to the statute of limitations contained in the Exchange Act, 15 U.S.C. § 78i. A distinction, however, must be drawn between Walck and this case because in Walck the court was considering the application of the tolling doctrine to a federal statute of limitations. Congress expressly enacted a non-tolling or limited tolling provision. In this case, the same considerations are not present; a state limitations period would be applied, and reference to federal policy, i.e. the federal doctrine of equitable tolling would be appropriate.

pattern. However, I conclude that defendants' contentions fail.

As the court in *United States v. Starnes*, 644 F.2d 673, 678 (7th Cir.1981) held, "the fact that there is but one objective underlying the separate acts does not diminish the applicability of RICO to those acts." Although *Starnes* was a criminal case, I believe that the court's reasoning is equally applicable here. · In *Starnes*, defendants had argued that RICO could not be applied to a conspiracy to commit a single arson; the predicate acts were mail fraud and interstate travel with intent to commit arson. The court held that although there was a single objective, the arson, several acts of racketeering were necessary to meet the single objective.

Similarly, addressing the pattern requirement in a civil RICO case, the court, in *Bank of America v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986), held that "Acts that are part of the same scheme or transaction can qualify as distinct predicate acts." Nine separate acts of wire and mail fraud, involving the same parties over a period of three years satisfied the "pattern" requirement. *See also United States of America v. The Freshie Co.*, 639 F.Supp. 442, 444 (E.D.Pa.1986) ("Nowhere in the statutory language or in *Sedima* do I find any suggestion that a pattern requires different criminal episodes."); *Kredietbank, N.V. v. Joyce Morris, Inc.*, No. 84–1903, slip op. at 5 (D.N.J. January 9, 1986) [Available on WESTLAW, DCTU database]; *Graham v. Slaughter*, 624 F.Supp. 222, 224–25 (N.D.Ill.1985). While there may have been only one transaction or scheme intended in this case, defendants allegedly committed several racketeering acts to entice plaintiff to enter the transaction. They also allegedly committed several racketeering acts in inducing individuals other than plaintiff to invest in Addison Development. Therefore, defendants' motion to dismiss on the grounds that plaintiff failed to allege a pattern of racketeering activity will be denied.